## The Atchison, Topeka & Santa Fe Railroad Company v. J. C. Briggs.

### No. 51.

1. EVIDENCE, *Confined to Issues.* The evidence on the trial of a case should be confined to the issues stated in the pleadings between the parties, and a witness should not be permitted, over the objection of the adverse party, to state facts that are collateral to the matters in dispute.

2. —— *Witness, Detailing Collateral Facts — Error.* The court should exclude all evidence of collateral facts or those which are incapable of affording any reasonable presumption or inference as to the principal facts of matters in dispute. It is error for the court to permit a witness to detail facts that are collateral and irrelevant, which are calculated to draw the minds of the jurors from the point in issue, and to excite prejudice and mislead them.

3. ACTION FOR FIRE— *Measure of Damages.* Damages caused by setting out fire in the operation of a railroad and destroying personal property should be measured by the fair, reasonable value of the property at the time and place of destruction.

4. —— *Rule.* The correct rule for the measurement of damages done to land alone, caused by fire communicated to it by the operation of a railroad, is the difference in the fair market value just before and just after the fire.

MEMORANDUM.— Error from Ford district court; A. J. ABBOTT, judge. Action by J. C. Briggs against The Atchison, Topeka & Santa Fe Railroad Company to recover damages on account of a fire set by a locomotive. Judgment for plaintiff for $187.50, and defendant brings the case here. Reversed. The opinion herein was filed January 17, 1896.

*A. A. Hurd*, and *Stambaugh & Hurd*, for plaintiff in error.

*Ed. H. Madison*, for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.: J. C. Briggs commenced this action in the district court of Ford county, Kansas,

against The Atchison, Topeka & Santa Fe Railroad Company, to recover damages on account of a fire set out by the railroad company in the operation of its line of railroad through Ford county, on the 5th day of April, 1888, in which he alleges that the railroad company, through its agents and employees, carelessly and negligently set fire to and burned on his land stubble and growing grass, and thereby damaged his land and grass in the sum of $300, and alleges that the fire was set out from the defective smoke-stack in a defective engine, the property of the railroad company. The case was tried before the court and a jury, and resulted in a verdict and judgment against the railroad company.   It filed a motion for a new trial, which was overruled, and it brings the case here for review.

The first error complained of is, that the court erred in permitting the introduction of certain testimony over the objections and exceptions of the defendant below.   The plaintiff had one Elliott sworn and examined as a witness on his behalf.   This witness was examined at great length in the direct and cross-examination, and re-examined several times, and re-cross-examined several times; and in the course of his examination, cross-examination, redirect and re-cross-examination it appears that he had had some trouble with the defendant below, railroad company, growing out of damages on account of fires burning over his premises.   For the purpose of affecting his credibility as a witness and showing his prejudice and hostility to the railroad company, he was asked on the cross-examination the following question: ''You are not friendly to the railroad company?''   And the witness, in a kind of evasive manner, said: ''Well, I do n't expect to upset any trains for them.''   And then, on redirect examination, the plaintiff below was

permitted, over the objection of defendant below, to examine the witness as follows, and the witness to answer the following questions :

"Ques. State why you were dissatisfied with the settlement with the railroad company." (This question was objected to ; objection overruled by the court, and witness answered)—Witness : "I would like to ask your honor a question ; I do n't wish before this audience to be placed in a false light, and for my own individual reputation at least I would like to make an answer to the question as to the claim I made, which I believe to be strictly honest."

This statement was objected to and asked to be stricken out. The objection was overruled, and the ruling of the court excepted to. By the witness : "My hostility toward the railroad company is simply for the reason that they have paid me very little over half of an honest claim that I put in ; that is the reason of my hostility." Motion of defendant below to strike out this statement was overruled, and the ruling excepted to ; and the court further permitted the plaintiff below to put the following questions to the witness, and the witness to answer the same, as follows :

"Ques. About how many times has the Santa Fe railroad company failed to pay you anything for fires that have been on your place?" (Objected to ; incompetent, irrelevant, and immaterial, and not in issue in this case ; overruled ; excepted to.) "Ans. They have paid me once, probably, without litigation ; may be twice ; I do n't recollect of more than twice ; I do n't recollect more than that ; may have been possibly more than once ; may be twice."

.    .    .    .    .    .    .    .    .    .

"Q. You always got damage when you did sue them?" (Objected to ; incompetent, irrelevant, and immaterial ; overruled ; excepted to.) "A. I have, and I have compromised after suit was commenced.

Well, I do n't know that I have ever got—that suit has not been carried clear through ; and I think compromise has been had after suit was commenced.''

''Q. They never came up and offered to pay you for damages they did to you?'' (Objected to ; incompetent, irrelevant, and immaterial, and not in issue in this case. Objection was overruled, and ruling excepted to.) ''A. They have come ; they have at sometimes come to see me before suit was commenced, but we did n't agree ; I did not take what they offered me.''

The whole of the foregoing evidence was incompetent and not relevant to the matters at issue. The court should have excluded all evidence of collateral facts, or those which were incapable of affording any reasonable presumption or inference as to the principal facts or matters of dispute. This evidence was calculated to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them. The issue in the case on trial had no relation to the matters in dispute between the witness Elliott and the railroad company, and a detail of his grievances before the jury was prejudicial to the defendant below, and tended to present a collateral issue as between the witness and the railroad company, which the jury should not have heard.

The plaintiff below called one Stubbs as a witness on his behalf, and examined him in relation to the duties of the master mechanic and other employees of the defendant below at the shops and roundhouse at Dodge City in 1886, and his knowledge of the manner in which inspections of engines were made by employees in the yards and roundhouses in 1886. This evidence was all given over the objections of the defendant below. We think this evidence was too remote, and was not competent to prove the condition

of the engine that is claimed to have set out the fire in April, 1888, and should have been excluded, as it did not prove any fact in dispute in this case, nor tend to prove any fact from which the jury could infer or presume negligence of the railroad company in caring for its engines and machinery in 1888.

The plaintiff in error complains of the instructions of the court to the jury. We do not deem it necessary to go over and consider all the instructions complained of by the plaintiff, as the judgment will have to be reversed for errors already pointed out, and it is not probable that the same instructions will again be given to the jury. The court gave the following instruction to the jury:

"You are instructed that the measure of damages in this case is to be determined by finding: *First*, What was the quantity in value of the crop of hay grown on the burned land in the year 1888, at the nearest market, at the time the same was harvested and ready for sale; *second*, what the quantity and value of said crop would have been if the fire had not occurred; *third*, how much of such difference, if any there be, was the direct result of the fire. Any deterioration of said crop occasioned by any other circumstance or condition cannot be considered."

We do not think that this instruction contains the correct rule for the measurement of damages in a case like this. The instructions of the court to the jury should be framed so as to present clearly to the jury the issues stated by the pleadings, and correspond with the evidence given under the issues. The plaintiff below, after the preliminary allegation, states:

"Said defendant, in April, 1888, through its agents and employees, carelessly and negligently set out fire to and burned on the land of the plaintiff growing grass, and thereby damaged plaintiff's land and grass in the sum of $300."

And then alleges that the fire was set out by reason of a defective smoke-stack in a defective engine. The plaintiff below, in stating his cause of action in his petition, seems to base his damages on the theory that the injury was to the land itself, and this is the theory upon which he seemed to offer his evidence. Plaintiff below called one James Crawford as a witness on his behalf, for the sole purpose of proving his damages; and, after showing his occupation as a farmer and laying the foundation for introducing the evidence, put the following questions to the witness :

" State, if you know, from experience or observation or any other source, the damage which is caused to the productive qualities of land with growing hay crop by fire late in the fall or early spring."

After the witness answered that he did, counsel for plaintiff propounded the following question to the witness :

" You may state, Mr. Crawford, to the jury, if you know what the damage would be to the producing elements of the soil if the land is burned over, say in April of any given year for that year ; I mean by that, how much would the crop be diminished per acre by burning the grass during the month of April."

The witness answered that it would be from 30 to 50 per cent. Plaintiff below also called Mr. Giles as a witness to prove the damages, and after showing that the witness was a farmer and had experience in the way of fire burning over the land, propounded to him the following question : " Do you know what the damage is to the yield, the producing elements of the soil, to have a fire pass over it in the early spring?" The witness answered that he did, and, in answer to questions gave the jury his judgment as to the damage to the producing qualities of the soil. Other witnesses

for plaintiff below were examined also as to the injury of the producing qualities of the soil after it had been burned over in the early spring.

We think that, if the plaintiff below had based his action on the damages to the stubble and grass alone, the damages should have been confined to the injury done at the time of the fire. The rule laid down by the court in the instructions was dependent upon too many contingencies, and was too uncertain and remote. The value of personal property destroyed by fire should be determined as of the time and place of the destruction. Where the injury done by setting out fire in the operation of a railroad consists in an injury to the land itself, the measure of damages is the difference in the market value of the land just before and just after the fire. The instruction of the court does not state the correct rule for the determination of damages to either personal or real estate.

The judgment of the district court is reversed.

All the Judges concurring.